Hand-Delivered

FILED
CHARLOTTE, NC

3:26-Cv-522-KDB

JUL 01 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

# I. INTRODUCTION

1. This action arises from Defendant Snyk, Inc.'s unlawful discrimination and retaliation against Plaintiff Dennis Robert McCauley in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

2. Defendant recruited Plaintiff to build and develop its Enterprise business under one performance standard. Plaintiff alleges that, after Defendant learned of Plaintiff's injury, Defendant progressively replaced that performance standard with a materially different performance standard under which Plaintiff was evaluated.

3. Plaintiff further alleges that Defendant, acting through Plaintiff's supervisor Joe White, repeatedly explained that materially different performance standard by referring to Plaintiff as the oldest and most experienced Account Director on the team while requiring Plaintiff to satisfy performance expectations materially different from those applied to similarly situated Account Directors reporting to White. Defendant ultimately documented that materially different performance standard through a Performance Coaching Plan ("PCP") and later relied upon the PCP in terminating Plaintiff's employment.

4. Plaintiff further alleges that he repeatedly reported the underlying facts concerning the changing performance standard, White's conduct, and the materially different performance standard to Defendant's management and Human Resources personnel before submitting a formal written complaint alleging disability discrimination, age discrimination, and retaliation. Defendant rejected Plaintiff's complaints, maintained the materially different performance standard Plaintiff challenged, denied Plaintiff's request for reassignment to a different manager, and ultimately terminated Plaintiff's employment pursuant to that standard.

5. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages, lost employment benefits, emotional distress, humiliation, mental anguish, loss of professional reputation, and other damages recoverable under applicable law.

# II. JURISDICTION AND VENUE

6. This action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634.

8. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination, age discrimination, and retaliation. On April 6, 2026, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff commenced this action within ninety (90) days of receipt of that Notice. A true and correct copy of the Notice of Right to Sue is attached as Exhibit A.

9. Venue is proper in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise

1

to Plaintiff's claims occurred within this District, including Plaintiff's employment, the alleged discriminatory conduct, and Plaintiff's termination.

10. Plaintiff has satisfied, or is deemed to have satisfied, all administrative prerequisites and conditions precedent to maintaining this action.

## III. PARTIES

11. Plaintiff Dennis Robert McCauley ("Plaintiff") is an adult resident of Mecklenburg County, North Carolina.

12. Defendant Snyk, Inc. ("Defendant" or "Snyk") is a corporation doing business in North Carolina and was Plaintiff's employer within the meaning of the ADA and the ADEA.

13. At all times relevant to this Complaint, Joe White served as Plaintiff's direct supervisor and acted within the course and scope of his employment with Defendant. White exercised managerial authority over Plaintiff's supervision, coaching, performance evaluations, performance expectations, implementation of the Performance Coaching Plan, discipline, and other matters affecting Plaintiff's continued employment, including the performance standard under which Plaintiff was evaluated.

14. At all times relevant to this Complaint, Defendant acted through its managers, supervisors, Human Resources personnel, and other employees, including Joseph White, Tracee Murphy, Samuel Bull, Sandy Mott, Kyle Novellano, Pedro Vidal, Michael Durso and others acting within the course and scope of their employment.

15. Whenever this Complaint refers to actions taken by Defendant through its managers, supervisors, Human Resources personnel, or other employees, those actions are alleged to have been taken on behalf of Defendant and within the course and scope of their employment.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment with Defendant

16. On February 5, 2024, Plaintiff began employment with Defendant as an Enterprise Account Director responsible for developing and growing Defendant's Enterprise business within North Carolina, South Carolina and Tennessee.

17. During the recruitment process, Defendant advised Plaintiff that successfully developing an Enterprise sales territory required substantial time to establish customer relationships, identify qualified opportunities, and develop an Enterprise sales pipeline. Defendant further advised Plaintiff that Enterprise sales opportunities mainly depended upon customers' existing contractual commitments, renewal cycles, and replacement timelines for incumbent providers, requiring significant time for opportunities to mature, progress through Defendant's sales process, and ultimately generate revenue.

18. Plaintiff accepted employment in reliance upon those representations and began developing his assigned Enterprise territory consistent with the performance standard Defendant communicated during the recruitment process.

19. Throughout Plaintiff's employment, Plaintiff reported directly to Joe White, Defendant's Regional Director of Sales for the Southeast.

2

20. On or about May 15, 2024, Plaintiff successfully closed a significant Enterprise transaction with Old Dominion Freight Line ("ODFL").

21. Following that transaction, White praised Plaintiff's performance. White acknowledged that developing Plaintiff's Enterprise territory and converting Enterprise opportunities into revenue takes substantial time given the nature of the Enterprise sales cycle and the time required to develop the territory. Consistent with that understanding, White advised Plaintiff that, although Plaintiff might not achieve his 2024 sales quota, Plaintiff was doing the right things to build Defendant's Enterprise business. White further expressed confidence that Plaintiff was positioning himself for long-term success and stated that, with time, Plaintiff would likely become one of Defendant's top Enterprise Account Directors. During that same discussion, White referred to Plaintiff as the oldest and most experienced Account Director on the team and advised Plaintiff that, because Plaintiff was the oldest and most experienced Account Director on the team, White expected Plaintiff to help develop the younger members of the sales team.

22. At no time prior to Plaintiff informing White of his injury did Defendant communicate that Plaintiff's performance was deficient, initiate formal corrective action, advise Plaintiff that Plaintiff's employment was in jeopardy, or communicate that Plaintiff was failing to perform under the performance standard Defendant had established when recruiting Plaintiff and under which Plaintiff performed before disclosing his injury to build and develop its Enterprise business.

23. Following Plaintiff's disclosure of his injury, Plaintiff alleges that Defendant subsequently evaluated Plaintiff under a materially different performance standard from the one Defendant communicated during the recruitment process and under which Plaintiff performed before disclosing his injury and from the standard applied to similarly situated Account Directors reporting to White.

## B. Plaintiff's Injury and Defendant's Initial Response

24. On or about May 25, 2024, Plaintiff sustained a serious lower back injury. After experiencing no meaningful improvement for several days, Plaintiff sought treatment at an urgent care facility, where he was prescribed medication. Plaintiff's condition did not improve.

25. On or about June 3, 2024, Plaintiff informed White that he had sustained a serious back injury, explained that he was experiencing significant pain and limited mobility, and advised White that he had difficulty moving, walking and was unable to drive.

26. Following his injury, Plaintiff experienced significant physical limitations, including difficulty walking, driving, sitting for extended periods, and performing other major life activities.

27. Upon receiving Plaintiff's disclosure, White responded that Plaintiff's job was Plaintiff's number one priority and advised Plaintiff that Plaintiff's activity and performance would determine Plaintiff's success "injury or no injury." White further remarked that Plaintiff's inability to drive was "problematic."

28. White subsequently raised whether Plaintiff should consider taking time away from work. White did not advise Plaintiff that leave would be approved or otherwise encourage Plaintiff to take leave. Based on White's prior statements emphasizing that Plaintiff's activity and performance would determine Plaintiff's success "injury or no injury,"

3

Plaintiff reasonably understood that taking leave could jeopardize his ability to succeed under that materially different standard White was applying and therefore continued working while recovering from his injury.

29. Plaintiff's spinal condition was subsequently confirmed through diagnostic imaging, corroborating the serious spinal impairment and physical limitations Plaintiff had previously reported to Defendant.

30. Defendant was aware of Plaintiff's injury, the physical limitations Plaintiff reported, and the resulting impact those limitations had on Plaintiff's mobility and ability to perform major life activities. Plaintiff alleges that, after Defendant learned of Plaintiff's injury and resulting impairment, Defendant progressively subjected Plaintiff to a materially different performance standard from the standard Defendant communicated during the recruitment process and under which Plaintiff performed before disclosing his injury.

## C. Defendant Progressively Subjected Plaintiff to a Materially Different Performance Standard

31. After Plaintiff informed White of his injury, Defendant, acting through White, progressively subjected Plaintiff to a materially different performance standard from the performance standard Defendant communicated during the recruitment process and under which Plaintiff performed before disclosing his injury and from the standard applied to similarly situated Account Directors reporting to White.

32. Prior to Plaintiff informing White of his injury, Defendant had not communicated that Plaintiff's performance was deficient, initiated formal corrective action, advised Plaintiff that his employment was in jeopardy, or communicated that Plaintiff was failing to perform under the performance standard Defendant had established and under which Plaintiff performed before disclosing his injury.

33. According to Defendant's Performance Coaching Plan, Defendant began documenting performance-related discussions with Plaintiff on or about June 10, 2024, approximately one week after Plaintiff informed White of his injury and resulting impairment, and continued those documented discussions throughout June, July, and August 2024. Plaintiff alleges that, during this period, Defendant progressively replaced the original performance standard communicated during recruitment and under which Plaintiff performed before disclosing his injury with a materially different performance standard.

34. During those discussions, White progressively communicated new and increasingly demanding performance expectations, including requiring Plaintiff to qualify sales opportunities earlier in the quarter, generate additional qualified opportunities, and satisfy increasingly accelerated performance expectations that had not previously been communicated, while simultaneously subjecting Plaintiff to heightened weekly scrutiny beyond the performance standard Defendant communicated during the recruitment process and under which Plaintiff performed before disclosing his injury. Plaintiff alleges that these progressively changing performance expectations collectively constituted the materially different performance standard described throughout this Complaint.

35. When Plaintiff questioned why the performance standard under which he was being evaluated continued to change, White repeatedly referred to Plaintiff as the oldest and most experienced Account Director on the team in explaining why Plaintiff was expected to satisfy that materially different performance standard. White further advised Plaintiff

4

that, because Plaintiff was the oldest and most experienced Account Director on the team, Plaintiff was expected to perform differently from the other similarly situated Account Directors reporting to White and to mentor and help develop the younger members of the sales organization.

36. Plaintiff repeatedly sought clarification regarding the objective performance metrics Defendant expected him to satisfy because the performance standard under which he was being evaluated continued to change. White did not provide the requested clarification.

37. Plaintiff alleges that Defendant did not merely increase Plaintiff's performance standard over time but instead evaluated Plaintiff under a materially different performance standard from the one Defendant communicated during the recruitment process and under which Plaintiff performed before disclosing his injury and from the standard applied to similarly situated Account Directors reporting to White. Defendant subsequently documented that materially different performance standard through the Performance Coaching Plan issued on or about August 29, 2024.

## D. Plaintiff Reports His Concerns to Human Resources

38. After White declined to provide the clarification Plaintiff requested regarding the continually changing performance standard under which he was being evaluated, Plaintiff reported those concerns to Defendant's Human Resources department, believing that Defendant, acting through White, was evaluating him under a materially different performance standard from the one Defendant had communicated during the recruitment process and under which Plaintiff performed before disclosing his injury and from the standard applied to similarly situated Account Directors reporting to White.

39. On or about August 26, 2024, Plaintiff met with Tracee Murphy of Defendant's Human Resources department. Plaintiff advised Murphy that he had previously informed White of his injury in or about early June 2024 and that, following that disclosure, White's treatment of Plaintiff changed, including continually changing the performance standard under which Plaintiff was being evaluated. Plaintiff further advised Murphy that White repeatedly referred to Plaintiff as the oldest and most experienced Account Director on the team, stated that he therefore expected more from Plaintiff, including mentoring and leading younger Account Directors, and imposed a materially different performance standard that had not been communicated when Plaintiff accepted employment or under which Plaintiff performed before disclosing his injury.

40. Plaintiff further advised Murphy that White's conduct extended beyond ordinary performance coaching and, in Plaintiff's view, constituted harassment, intimidation, and manipulation. Murphy responded that Plaintiff's characterization involved what she described as strong words. Plaintiff nevertheless reiterated that those terms accurately reflected the conduct he was reporting and requested reassignment to a different manager. Plaintiff further advised Murphy that White repeatedly questioned whether Plaintiff wanted to remain employed with Defendant despite Plaintiff repeatedly expressing his commitment to the position, his confidence in Defendant's technology, and his commitment to building a successful Enterprise business. Plaintiff advised Murphy that White's repeated questioning was inconsistent with Plaintiff's expressed commitment and occurred during the same period in which White was progressively subjecting Plaintiff to the materially different performance standard alleged herein.

5

41. Murphy advised Plaintiff that she believed the issues reflected a breakdown in communication and that White was attempting to help Plaintiff. Murphy stated that she wished Plaintiff had come to her sooner, encouraged Plaintiff to "manage up" with White, referred Plaintiff to Defendant's Employee Assistance Program, and stated that she would hold White accountable. Murphy also asked whether Plaintiff needed time away from work. Plaintiff advised that he was comparatively better but was still working through issues related to his injury. Based on White's prior statements that Plaintiff's activity and performance would determine Plaintiff's success "injury or no injury," Plaintiff did not believe taking leave was a realistic option because he believed it could jeopardize his ability to satisfy the materially different performance standard White was applying.

42. Plaintiff disagreed with Murphy's assessment, renewed his request for reassignment, and requested that Defendant investigate the concerns he had reported. Defendant did not reassign Plaintiff, modify the materially different performance standard Plaintiff had reported, or otherwise take corrective action before issuing the Performance Coaching Plan three days later.

43. On or about August 29, 2024, three days after Plaintiff reported these concerns to Human Resources and requested reassignment, Defendant, through White and Human Resources representative Samuel Bull, presented Plaintiff with a written Performance Coaching Plan ("PCP"). The PCP documented the materially different performance standard Defendant had been applying to Plaintiff.

44. During the meeting on or about August 29, 2024, Plaintiff advised White and Bull that the performance standard reflected in the PCP was not the performance standard Defendant had communicated when recruiting Plaintiff and under which Plaintiff performed before disclosing his injury to build and develop its Enterprise business. Plaintiff reminded White and Bull that he had reported these concerns to Human Resources three days earlier and objected that the PCP reflected the materially different performance standard under which Defendant had been evaluating Plaintiff.

## E. Plaintiff Formally Opposes What He Believed to Be Disability and Age Discrimination

45. On or about September 18, 2024, Plaintiff submitted a detailed written complaint to Defendant's Human Resources department. In that complaint, Plaintiff formally asserted that Defendant had subjected him to disability discrimination, age discrimination, retaliation, and a materially different performance standard from the one under which Defendant had communicated during the recruitment process and under which Plaintiff performed before disclosing his injury and from the performance standard applied to similarly situated Account Directors reporting to White. Plaintiff requested that Defendant investigate his complaints and take appropriate corrective action.

46. On or about September 23, 2024, Plaintiff advised White that the situation had become untenable. White responded that he was accountable and responsible for Plaintiff's situation and stated that he had lost sleep over the matter.

47. On or about September 24, 2024, Defendant advised Plaintiff that it had investigated the concerns raised in Plaintiff's September 18 complaint and concluded that they lacked merit. Defendant further advised Plaintiff that his performance had not met the level it

6

expected of someone with Plaintiff's level of experience and continued to rely upon the performance discussions and Performance Coaching Plan that Plaintiff had challenged as reflecting a materially different performance standard.

48. On or about September 25, 2024, Plaintiff advised Defendant that he disagreed with the conclusions of its investigation and reiterated his belief that Defendant had subjected him to disability discrimination, age discrimination, retaliation, and a materially different performance standard documented in the Performance Coaching Plan from the standard Defendant communicated during the recruitment process and under which Plaintiff performed before disclosing his injury and from the performance standard applied to similarly situated Account Directors.

49. On or about September 26, 2024, Plaintiff met with Sandy Mott of Defendant's Human Resources department. Plaintiff again described the conduct he believed constituted disability discrimination, age discrimination, intimidation, and the materially different performance standard under which Defendant had evaluated him following Plaintiff's disclosure of his injury to White. Plaintiff also described the resulting impact on his health. During that discussion, while Plaintiff was describing the conduct he believed constituted disability discrimination, age discrimination, intimidation, and the resulting impact on his health, Mott laughed. Plaintiff immediately asked whether Mott believed Plaintiff's experience was amusing. Mott apologized and then redirected the discussion to a potential severance package.

50. On or about September 27, 2024, Plaintiff submitted additional information to Defendant, including comparator information concerning sales performance, forecasted opportunities, pipeline development, and proof-of-concepts ("POCs") in progress, which Plaintiff believed demonstrated that Defendant had evaluated Plaintiff under a materially different performance standard from similarly situated Account Directors.

51. On or about October 2, 2024, Defendant again advised Plaintiff that it had found no evidence supporting Plaintiff's complaints, continued to rely upon the performance standard Plaintiff had challenged throughout the Performance Coaching Plan process, and advised Plaintiff that his Talent Business Partner would contact Plaintiff regarding next steps in the Performance Coaching Plan process. On October 3, 2024, Defendant terminated Plaintiff's employment.

## F. Defendant Terminates Plaintiff's Employment

52. During the termination meeting, Plaintiff again advised Defendant that the performance standard under which he had been evaluated differed materially from the performance standard Defendant had communicated during the recruitment process. Plaintiff further advised Defendant that he believed the materially different performance standard Defendant had applied following Plaintiff's disclosure of his injury, rather than the performance standard under which Plaintiff performed before disclosing his injury, resulted in his termination. Plaintiff further advised Defendant that he believed those actions constituted disability discrimination and age discrimination.

53. Defendant did not address Plaintiff's concerns regarding the materially different performance standard or his allegations of disability discrimination and age discrimination and instead transitioned the discussion to the logistics of Plaintiff's separation, severance, and other post-employment matters.

7

54. Defendant advised Plaintiff that the termination was based upon Plaintiff's alleged failure to satisfy and successfully complete the Performance Coaching Plan ("PCP").

55. Plaintiff alleges that the PCP documented the materially different performance standard Defendant had progressively imposed after Plaintiff informed White of his injury and that Defendant ultimately relied upon that materially different performance standard in terminating Plaintiff's employment.

56. Plaintiff further alleges that Defendant terminated his employment after Plaintiff repeatedly sought clarification regarding the materially different performance standard under which he was being evaluated, reported the underlying facts to Human Resources, requested reassignment to a different manager, formally complained of disability discrimination, age discrimination, and retaliation, challenged the Performance Coaching Plan, and submitted comparator information demonstrating that Defendant was evaluating Plaintiff under a materially different performance standard from similarly situated Account Directors.

57. Plaintiff alleges that Defendant terminated his employment based upon the materially different performance standard documented in the Performance Coaching Plan rather than the performance standard Defendant had communicated during the recruitment process and under which Plaintiff performed before disclosing his injury and that applied to similarly situated Account Directors.

## V. CAUSES OF ACTION:

Plaintiff incorporates by reference the foregoing allegations and asserts the following causes of action against Defendant.

### COUNT I: Disability Discrimination in Violation of the Americans with Disabilities Act (42 U.S.C. § 12112)

58. Plaintiff realleges and incorporates by reference Paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act. Plaintiff was able to perform the essential functions of his position as an Enterprise Account Director, with or without reasonable accommodation.

60. Defendant knew of Plaintiff's disability no later than on or about June 3, 2024, when Plaintiff informed White of his spinal injury and resulting physical limitations.

61. Plaintiff alleges that, after Defendant learned of Plaintiff's disability, Defendant, acting through White, progressively subjected Plaintiff to a materially different performance standard than the one Defendant communicated when recruiting Plaintiff and under which Plaintiff performed before disclosing his injury to build and develop its Enterprise business and from the standard applied to similarly situated Account Directors reporting to White.

62. Plaintiff further alleges that Defendant subjected Plaintiff to increased scrutiny, documented that materially different performance standard through the Performance Coaching Plan ("PCP"), maintained that performance standard after Plaintiff repeatedly

reported his concerns, and ultimately terminated Plaintiff's employment pursuant to that performance standard.

63. Plaintiff alleges that Defendant's stated reliance upon Plaintiff's alleged failure to satisfy and successfully complete the Performance Coaching Plan ("PCP") was a pretext for disability discrimination. Plaintiff further alleges that the PCP memorialized the materially different performance standard Defendant imposed after learning of Plaintiff's disability and that Defendant relied upon that materially different standard in terminating Plaintiff's employment.

64. By subjecting Plaintiff to a materially different performance standard because of his disability and terminating his employment pursuant to that standard, Defendant intentionally discriminated against Plaintiff in violation of the Americans with Disabilities Act.

65. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, lost employment benefits, emotional distress, humiliation, mental anguish, and other compensatory damages. Plaintiff is entitled to all legal and equitable relief available under the Americans with Disabilities Act, including compensatory damages, attorney's fees if later represented by counsel, costs, and such further relief as the Court deems just and proper.

## COUNT II: Retaliation in Violation of the Americans with Disabilities Act (42 U.S.C. § 12203)

66. Plaintiff realleges and incorporates by reference Paragraphs 1 through 65 of this Complaint as though fully set forth herein.

67. Plaintiff engaged in activity protected by the Americans with Disabilities Act by repeatedly opposing what he reasonably believed to be disability discrimination. Plaintiff reported the underlying facts concerning the materially different performance standard to Defendant's management and Human Resources personnel, requested corrective action, submitted a formal written complaint alleging disability discrimination, opposed Defendant's continued application of the materially different standard, challenged Defendant's investigation and conclusions, and continued opposing Defendant's conduct through the date of his termination.

68. Defendant was aware of Plaintiff's protected activity. Plaintiff reported his concerns directly to White and Defendant's Human Resources personnel, submitted a written complaint, participated in Defendant's investigation, and repeatedly advised Defendant that he believed he was being subjected to disability discrimination.

69. After Plaintiff engaged in protected activity, Defendant continued applying the materially different performance standard Plaintiff had challenged, denied Plaintiff's request for reassignment to a different manager, rejected Plaintiff's complaints following its investigation, maintained the Performance Coaching Plan documenting that performance standard, and ultimately terminated Plaintiff's employment pursuant to that standard.

70. Defendant's actions, including maintaining the materially different performance standard, rejecting Plaintiff's complaints, denying Plaintiff's request for reassignment, and terminating Plaintiff's employment, would dissuade a reasonable employee from opposing disability discrimination or exercising rights protected by the Americans with Disabilities Act.

9

71. Plaintiff alleges that Defendant's materially adverse actions were taken because Plaintiff engaged in protected activity under the Americans with Disabilities Act.
72. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer lost wages, lost employment benefits, emotional distress, humiliation, mental anguish, and other compensatory damages. Plaintiff is entitled to all legal and equitable relief available under the Americans with Disabilities Act, together with costs, attorney's fees if later represented by counsel, and such other relief as the Court deems just and proper.

## COUNT III: Age Discrimination in Violation of the Age Discrimination in Employment Act (29 U.S.C. § 623(a))

73. Plaintiff realleges and incorporates by reference Paragraphs 1 through 72 of this Complaint as though fully set forth herein.
74. At all relevant times, Plaintiff was over forty years of age and was therefore a member of the class protected by the Age Discrimination in Employment Act.
75. Throughout Plaintiff's employment, White repeatedly referred to Plaintiff as the oldest and most experienced Account Director on the team. White advised Plaintiff that, because Plaintiff was the oldest and most experienced Account Director on the team, White expected more from Plaintiff, including mentoring and helping develop the younger Account Directors.
76. Plaintiff alleges that, after Defendant learned of Plaintiff's injury, Defendant, acting through White, progressively subjected Plaintiff to a materially different performance standard from the one Defendant communicated when recruiting Plaintiff and under which Plaintiff performed before disclosing his injury to build and develop its Enterprise business and from the standard applied to similarly situated Account Directors reporting to White. Plaintiff further alleges that White repeatedly referred to Plaintiff as the oldest and most experienced Account Director on the team in explaining why Plaintiff was expected to satisfy that materially different performance standard.
77. Defendant subsequently documented that materially different performance standard through the Performance Coaching Plan ("PCP") and ultimately relied upon that performance standard in terminating Plaintiff's employment.
78. Plaintiff alleges that Defendant intentionally discriminated against him because of his age by subjecting Plaintiff to a materially different performance standard than similarly situated Account Directors, repeatedly explaining those different performance expectations by referring to Plaintiff as the oldest and most experienced Account Director on the team, maintaining that performance standard after Plaintiff repeatedly challenged it, and ultimately terminating Plaintiff's employment pursuant to that standard.
79. Plaintiff further alleges that Defendant's stated reliance upon Plaintiff's alleged failure to satisfy the Performance Coaching Plan was a pretext for age discrimination. Plaintiff alleges that Defendant relied upon the materially different standard documented in the Performance Coaching Plan after repeatedly explaining that materially different standard by referring to Plaintiff as the oldest and most experienced Account Director on the team.
80. By subjecting Plaintiff to a materially different performance standard because of his age and terminating his employment pursuant to that standard, Defendant intentionally discriminated against Plaintiff in violation of the Age Discrimination in Employment Act.

81. As a direct and proximate result of Defendant's unlawful age discrimination, Plaintiff has suffered and continues to suffer lost wages, lost employment benefits, emotional distress, humiliation, mental anguish, and other damages recoverable under the Age Discrimination in Employment Act. Plaintiff is entitled to all legal and equitable relief authorized by law, together with costs and such further relief as the Court deems just and proper.

## COUNT IV: Retaliation in Violation of the Age Discrimination in Employment Act (29 U.S.C. § 623(d))

82. Plaintiff realleges and incorporates by reference Paragraphs 1 through 81 of this Complaint as though fully set forth herein.
83. Plaintiff engaged in activity protected by the Age Discrimination in Employment Act by repeatedly opposing what he reasonably believed to be age discrimination. Plaintiff reported to Defendant's management and Human Resources personnel that White repeatedly referred to Plaintiff as the oldest and most experienced Account Director on the team in explaining why Plaintiff was expected to satisfy the materially different performance standard under which he was being evaluated. Plaintiff thereafter submitted a formal written complaint alleging age discrimination, challenged Defendant's investigation and conclusions, continued opposing Defendant's application of that materially different performance standard, and reiterated those concerns through the date of his termination.
84. Defendant was aware of Plaintiff's protected activity. Plaintiff reported his concerns directly to White and Defendant's Human Resources personnel, submitted a written complaint, participated in Defendant's investigation, and repeatedly advised Defendant that he believed he was being subjected to age discrimination.
85. After Plaintiff engaged in protected activity, Defendant continued applying that materially different performance standard Plaintiff had challenged, denied Plaintiff's request for reassignment to a different manager, rejected Plaintiff's complaints following its investigation, maintained the Performance Coaching Plan ("PCP") documenting that performance standard, and ultimately terminated Plaintiff's employment pursuant to that standard.
86. Defendant's actions, including maintaining the materially different performance standard, rejecting Plaintiff's complaints, denying Plaintiff's request for reassignment, and terminating Plaintiff's employment, would dissuade a reasonable employee from opposing age discrimination or exercising rights protected by the Age Discrimination in Employment Act.
87. Plaintiff alleges that Defendant's materially adverse actions were taken because Plaintiff engaged in protected activity under the Age Discrimination in Employment Act.
88. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer lost wages, lost employment benefits, emotional distress, humiliation, mental anguish, and other damages recoverable under the Age Discrimination in Employment Act. Plaintiff is entitled to all legal and equitable relief authorized by law, together with costs and such further relief as the Court deems just and proper.

# VII. DAMAGES

89. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to:

**a.** Back pay from October 3, 2024 through the date of judgment, including lost salary, commissions, bonuses, employment benefits, employer contributions to retirement and health benefit plans, and all other compensation and benefits Plaintiff would have received but for Defendant's unlawful conduct, offset by any applicable interim earnings.

**b.** Lost commission income, including commissions Plaintiff reasonably would have earned on qualified sales opportunities, Proofs of Concept ("POCs"), pipeline opportunities, Enterprise accounts, and other business opportunities that Plaintiff originated, qualified, engaged or developed prior to his termination, together with all other commission losses proven at trial.

**c.** Front pay in lieu of reinstatement, representing Plaintiff's future lost earnings, compensation, benefits, commission opportunities, and earning capacity resulting from Defendant's unlawful conduct.

**d.** Lost equity compensation, including forfeited stock options and other equity-based compensation.

**e.** Out-of-pocket medical expenses, health insurance costs, and other economic losses incurred as a result of Defendant's unlawful conduct.

**f.** Compensatory damages for emotional distress, mental anguish, anxiety, panic attacks, insomnia, humiliation, inconvenience, loss of enjoyment of life, and other non-economic damages recoverable under applicable law.

**g.** Punitive damages recoverable under the Americans with Disabilities Act.

**h.** Liquidated damages recoverable under the Age Discrimination in Employment Act for Defendant's willful violations of that statute.

**i.** Prejudgment interest, post-judgment interest, taxable costs, and attorney's fees to the extent authorized by law.

**j.** Such other legal and equitable relief as the Court deems just and proper.

# VIII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

12

# IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

**a.** Enter judgment in Plaintiff's favor on all Counts of this Complaint;

**b.** Award Plaintiff reinstatement or, in lieu thereof, front pay, together with back pay, lost commissions, lost bonuses, lost benefits, lost equity compensation, and all other economic damages recoverable under applicable law;

**c.** Award Plaintiff compensatory damages for emotional distress, mental anguish, anxiety, humiliation, loss of enjoyment of life, and all other non-economic damages recoverable under applicable law;

**d.** Award Plaintiff punitive damages under the Americans with Disabilities Act;

**e.** Award Plaintiff liquidated damages under the Age Discrimination in Employment Act;

**f.** Award Plaintiff prejudgment interest, post-judgment interest, costs, and attorney's fees to the extent authorized by law;

**g.** Award such declaratory, equitable, and injunctive relief as the Court deems appropriate and authorized by law to remedy Defendant's unlawful conduct and prevent future violations of applicable federal employment discrimination laws; and

**h.** Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dennis McCauley
Plaintiff, Pro Se

1064 Kenilworth Avenue
Charlotte, NC 28204
917-572-9689
mccauley.10@gmail.com

Date: July 1, 2026